**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN SOMERFIELD, | ) | |
| | ) | No. 16 C 3446 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| NANCY A BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Steven Somerfield ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff disability insurance benefits or supplemental security income under Title II ("DIB") and Title XVI ("SSI") of the Social Security Act. The Court grants the Plaintiff's motion for summary judgment (Dkt. 15), and denies the Commissioner's motion for summary judgment (Dkt. 23). The Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

## STATEMENT

**I.   Procedural History**

Plaintiff filed dual DIB and SSI applications on March 26, 2013, alleging a disability onset date of December 17, 2012, chronic ischemic heart disease, obesity, lower back problems, diabetes, obstructive sleep apnea, cardiomyopathy, hypertension, depression, coronary artery disease status post myocardial infarction and status post coronary artery bypass. (R. 69–72, 83–

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

84.) His initial applications were denied on April 9, 2013, and again at the reconsideration stage on January 23, 2014. (R. 69–70, 120–21.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 6, 2014, and the hearing was scheduled on July 23, 2014. (R.148–50, 40.) At the hearing, Plaintiff who was represented by counsel, appeared and testified. (R. 40–68.) A vocational expert ("VE") also appeared and offered testimony. (*Id.*) On September 24, 2014, the ALJ issued a written decision denying Plaintiff's applications for DIB and SSI benefits. (R. 21–34.) Plaintiff requested review of the ALJ's opinion, which was denied, making the ALJ's decision the final decision of the Commissioner. (R. at 3–6.) Plaintiff then filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. The ALJ's Decision

Applying the five-step sequential evaluation process pursuant to 20 C.F.R. § 404.1520, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of January 1, 2006. (R. 23.) At step two, the ALJ determined that Plaintiff had the severe impairments of obesity, sleep apnea, diabetes with neuropathy, hypertension and chronic obstructive pulmonary disease (COPD); and coronary artery disease (CAD), status post myocardial infarction and status post coronary artery bypass. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet the severity requirements of the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 26.) Before step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). (R. 26.) The ALJ also found that Plaintiff's RFC was further limited to never climbing ladders, ropes, and scaffold; occasionally climbing ramps and stairs; occasionally balancing, stooping kneeling, crouching, and crawling; avoiding concentrated exposure to dust flumes, odors, gases and poor ventilation; and avoiding

unprotected heights and dangerous moving machinery. (R. 26.) At step four, the ALJ concluded that Plaintiff could not perform his past relevant work as a data entry operator, bouncer or cook. (R. 32.) Finally, at step five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, given his age, education, work experience and RFC, including office clerk, information clerk and order clerk. (R. 33.) Given these findings, the ALJ concluded that Plaintiff was disabled as defined in the Social Security Act from January 1, 2006 until the date of the ALJ's opinion on September 24, 2014. (R. 33–34.)

## DISCUSSION

### I. Standard of Review

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

### II. ANALYSIS

Plaintiff raised three arguments on appeal: (1) the ALJ erred in her assessment of Plaintiff's RFC; (2) the ALJ failed to consider the combined effect of Plaintiff's impairments; and (3) the ALJ erred in her assessment of Plaintiff's subjective allegations.

### A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms

Because an RFC assessment will often "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Plaintiff's argument that the ALJ improperly analyzed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). The Social Security Administration (the "Administration") recently clarified its sub-regulatory policies about symptom evaluation, eliminating the term "credibility" to emphasize that "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1 (effective March 16, 2016). "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The underlying regulations and applicable Seventh Circuit law about assessing claimants' statements remain unchanged. 20 C.F.R. § 404.1529; *see Cole,* 831 F.3d at 412.

Under the regulations, when a claimant has a medically determinable impairment that could reasonably be expected to produce the claimed subjective symptoms, the ALJ must evaluate the intensity and persistence of those symptoms pursuant to objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c). Among the evidence to be considered are "the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ cannot discount a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th

Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). SSR 16-3p, like former SSR 96-7p, directs the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

An ALJ's evaluation of a claimant's subjective symptoms must be supported by substantial evidence and may be overturned only if it is "patently wrong." *Pepper*, 712 F.3d at 367; *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2010). Even then, the ALJ still must adequately explain her subjective symptom determination "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367 (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). Failure to do so may be grounds for reversal. *Id.* (relying on *Bjornson*, 671 F.3d at 649). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted).

As an initial matter, Plaintiff argues that the ALJ used "boilerplate" language as an explanation for her subjective symptom evaluation. (Pl.'s Mem at 15). In her decision, the ALJ stated in part:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. at 31). This is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the

testimony." *Bjornson,* 671 F.3d at 645. "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." *Pepper v. Colvin,* 712 F.3d 351, 367–68 (7th Cir. 2013). While the Court is not convinced that the ALJ's use of this boilerplate language alone is grounds for reversal in this case; the Court finds that the reasons offered by the ALJ for discounting Plaintiff's symptom statements are legally insufficient and not supported by substantial evidence, necessitating remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

*1. Daily activities*

First, the ALJ did not explain how Plaintiff's ability to perform limited daily activities undermines his allegations of pain or equates to an ability to carry out full-time work. While ALJ's are permitted to consider a claimant's daily activities when assessing a Plaintiff's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs must not place "undue weight" on those activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2017); *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Moreover, when an ALJ does examine a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ states, "[Plaintiff] reported he can run errands, shop, and clean because he has to. He said that there is nobody else to do it for him. However, the fact that he can do these

activities supports that they are not physically or mentally precluded." (R. 32.) The ALJ did not adequately explain how Plaintiff's ability to "run errands, shop and clean because he has to" contradicts his allegations of pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"); *Hughes v. Astrue*, 705 F.3d 276, 278–79 (7th Cir. 2013) (finding that the ALJ improperly discounted claimant's allegations by failing to recognize that performing daily activities out of necessity can still cause pain). Likewise, these limited activities do not demonstrate that Plaintiff can perform full-time work. *See Bjornson*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week).

### *2. Failure to follow a diet and quit smoking*

The ALJ's explanation that although "[Plaintiff] has been repeatedly advised to diet, lose weight, and stop smoking," "[h]e still smokes, and described little dietary changes," (R. 32), is similarly flawed. An ALJ may consider "[failure] to follow prescribed treatment" as a factor in evaluating a claimant's symptom statements. SSR 16-3p at *8-9; SSR 96-7p at *7. However, according to the regulations, "A treating source's statement that an individual 'should' lose

7

weight or has 'been advised' to get more exercise is not prescribed treatment." *See* SSR 02-1p, 2002 WL 34686281 at * 9 (effective Sept. 12, 2002). Further, pursuant to the regulations:

> When a treating source has prescribed treatment for obesity, the treatment must clearly be expected to improve the impairment to the extent that the person will not be disabled. . . . [T]he goals of treatment for obesity are generally modest, and treatment is often ineffective. Therefore, we will not find failure to follow prescribed treatment unless there is clear evidence that treatment would be successful. The obesity must be expected to improve to the point at which the individual would not meet our definition of disability, considering not only the obesity, but any other impairment(s).

*Id.* Neither the ALJ nor the defendant cited to any prescribed treatments for obesity that would "clearly be expected to improve the impairment to the extent that the person will not be disabled." *See Id.* Defendant cites to numerous places where physicians recommend weight loss or home exercise but these cannot be construed as prescribed treatment as defined by the regulations.

As for quitting smoking, Defendant argues, "Although smoking is addictive, many people are able to stop with proper motivation and the ALJ could reasonably consider Somerfield's continued smoking inconsistent with his alleged fear of disabling pain." (Def.'s Mem. at 11.) Contrary to Defendant's assertion, the Seventh Circuit has found that failure to quit smoking is "an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). In *Shramek*, the Court explains:

> Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop.

*Id.*; *see also*, *Rousey v. Heckler*, 771, F.2d 1065, 1070 (7th Cir. 1985) ("it was illogical for the ALJ to conclude in his findings that [claimant's] 'allegations as to the severity of her chest pain

8

is not credible in light of the fact that it does not prevent her from continuing to smoke a half-pack of cigarettes a day.") Without an adequate explanation of how Plaintiff's failure to follow a diet and quit smoking undercuts his symptom statements, the Court cannot credit this rationale.

### 3. *Inconsistency with the objective medical evidence*

Likewise, the ALJ erred in discounting Plaintiff's symptom statements because "[Plaintiff] reports little benefit from [continuous positive air pressure] CPAP and subsequent [bi-level positive airway pressure] BiPAP for breathing; and describes feeling tired, waking unrefreshed, yet his records in contrast suggest good sleep with his treatment." (R. 32.) This is the only supposed inconsistency with the objective medical evidence that the ALJ cites. However, the ALJ does not point to where the records "suggest good sleep with his treatment," and a review of the medical evidence reveals numerous instances, not addressed by the ALJ, where the Plaintiff reports worsening of symptoms, poor sleep, fatigue, a need to take naps, and difficulties with the BiPAP machine. (R. 467, 552-53, 590, 610-11, 616-17, 623, 653, 663, 667-68, 700, 710, 744, 752, 865, 1010-11.) "[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014), citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982). She failed to do so here. Defendant argues that the ALJ correctly pointed out that Plaintiff "had excellent compliance and was tolerating his mask well," (Def.'s Mem. at 5), in July 2013. However, neither Defendant nor the ALJ address a subsequent consultative examination with Seth Osafo, M.D. in December 6, 2013, which indicates that Plaintiff suffers "daily exertional shortness of breath associated with fatigue and lack of energy" related to his obstructive sleep apnea and that Plaintiff reports feeling fatigued and tired all day. (R. 1010-11.) The ALJ erred by failing to discuss evidence contrary to her conclusion.

9

*4. Defendant's arguments*

Defendant's arguments in support of the ALJ's subjective symptom evaluation are unavailing. First, Defendant argues that "the medical opinions" and "the state agency medical assessments" support the ALJ's subjective symptom evaluation. (Def.'s Mem. at 12). However, the ALJ did not cite to any medical opinions or state agency medical assessments as a rationale for her analysis, making this argument an impermissible *post hoc* rationalization that cannot be used by this Court. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (*citing SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943)); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"). Further, the Court notes that, contrary to Defendant's assertions, the ALJ's subjective symptom evaluation is not supported by the state agency consultants at the initial and reconsideration level, both of whom opined that Plaintiff's subjective symptom statements are "substantiated by the objective medical evidence alone." (R. 76, 88.) Defendant's contention that "although the ALJ did not explicitly discuss the state agency credibility findings, she clearly reviewed this evidence and took it into account," (Def.'s Mem. at 9), is mere speculation. Contrary to Defendant's assertion, the Court cannot know whether the ALJ considered the state agency's credibility finding because the ALJ did not address it in her decision.

Second, Defendant's rationale that the ALJ did "give some weight to his allegations and therefore greatly restricted his RFC to a limited range of sedentary work," (Def.'s Mem. at 12,

10

citing R. 26), is also problematic. Although the ALJ appears to have credited some of Plaintiff's symptom statements, the ALJ did not offer any indication of "which of [claimant's] statements are not entirely credible or how credible or noncredible any of them are." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). Defendant asserts that "the ALJ was not required to address whether each statement alleged by [Plaintiff] was credible." (Def.'s Mem. at 9). While an ALJ need not address every symptom allegation, she must provide sufficient details as to allow the Court to trace the path of her reasoning. *See Steele*, 290 F.3d at 942; *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ's failure to do so leaves the Court unable to discern which of the Plaintiff's statements the ALJ credited and which she did not.

Third, Defendant cites *Mueller v. Colvin*, 524 F. App'x 282, 285 (7th Cir. 2013) for the proposition that "[an] ALJ's errors regarding an adverse credibility finding are harmless if the RFC is not affected." (Def.'s Mem. at 10). However, in *Mueller*, the Seventh Circuit found that a credibility determination "may constitute harmless error if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless." *Mueller*, 524 F. App'x at 285. That is not the case here. Moreover, the ALJ's RFC determination is affected by the ALJ's errors regarding her subjective symptom evaluation. Although Defendant argues that the ALJ "was required only to incorporate those impairments and limitations that [s]he accepted as credible" in her assessment of Plaintiff's RFC, (Def.'s Mem. at 4), as noted above, the ALJ did not indicate which symptom statements she found to be credible and which she discounted. Further, the ALJ did not address evidence contrary to her conclusions that would support some of Plaintiff's statements such as his allegations of fatigue, daytime sleepiness, and needing to nap during the day. *See* (R. 467, 552-53, 590, 610-11, 616-17, 623, 653, 663, 667-68, 700, 710, 744, 752, 865, 1010-11); *Zurawski v. Halter*, 245 F. 3d 881, 887 (7th Cir. 2001) ("where the medical

signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations"). This is significant because the VE determined that an individual who required three rest periods of one hour each, in addition to typically permitted breaks, would be precluded from competitive work (R. 66-67.)

In sum, the ALJ's explanation was legally insufficient to discount Plaintiff's symptom statements. While the Court does not hold that the ALJ should have accepted Plaintiff's allegations, the foundation underlying her assessment was inadequate. On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p. In particular, SSR 16-3p states that it is "not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms;" instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." The ALJ should take heed to follow the requirements of SSR 16-3p.

### III. Issues on Remand

Plaintiff also argues that the ALJ failed to make adequately assess Plaintiff's RFC and the combined impact of Plaintiff's impairments. Because the Court remands on the ALJ's subjective symptom evaluation, it need not explore in detail the other arguments posited by Plaintiff on appeal since the analysis would not change the results in this case. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

On remand, the ALJ shall reassess Plaintiff's subjective symptom statements with due regard for the full range of medical evidence, following the requirements of SSR 16-3p. The ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of the

evidence of record, including Plaintiff's testimony, and shall explain the basis of her findings in accordance with applicable regulations and rulings.

## **CONCLUSION**

For the reasons discussed herein, the Court grants the Plaintiff's motion for summary judgment (Dkt. 15), and denies the Commissioner's motion for summary judgment (Dkt. 23.) The Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

**ENTER:**

**DATED:**  8/25/2017

_____

Susan E. Cox
United States Magistrate Judge